**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
LAWRENCE BRYANT,              :
                              :
         Plaintiff,           :
                              :
v.                            :   CIV. NO. 3:09CV981(AWT)
                              :
ROBERT M. WARD, COMMISSIONER  :
OF THE DEPARTMENT OF MOTOR    :
VEHICLES, STATE OF CONNECTICUT:
CITY OF BRISTOL, CONNECTICUT, :
BRISTOL CHIEF OF POLICE JOHN  :
DIVENERE, OFFICER BRENDAN J.  :
MULVEY, OFFICER MICHAEL HEALY,:
and LIEUTENANT RICHARD BROWN  :
OF THE BRISTOL POLICE         :
DEPARTMENT,                   :
                              :
         Defendants.          :
------------------------------x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Lawrence Bryant, brings this action against the defendants alleging various federal, state, and common law claims arising out of a traffic stop conducted by defendant Brendan J. Mulvey, an officer in the Bristol Police Department. The remaining defendants in the case are defendants Officer Mulvey, Officer Michael Healy, Lieutenant Richard Brown, Chief of Police John Divenere, and the City of Bristol.[1]  These defendants have moved for summary judgment on all remaining claims.  For the

---

[1]See Order Re State Defendants' Motion to Dismiss (Doc. No. 35) and Order Re Status Conference (Doc. No. 39).

following reasons, the motion is being granted as to the federal claims and the court declines to exercise jurisdiction over the state law claims.

I.   **FACTUAL BACKGROUND**

On February 11, 2009, defendant Mulvey initiated a traffic stop after he observed the car being driven by plaintiff Lawrence Bryant turn without signaling and drive the wrong way out of a one-way drive. Mulvey obtained the plaintiff's license and conducted a computer check, which reflected that Bryant's driving privilege has been suspended on December 3, 2008.[2]  Mulvey informed Bryant that he would be placed under arrest.  Before Bryant was taken into custody, Mulvey called a truck to tow his car.  The road on which Bryant had been pulled over was narrow and heavily traveled, and Mulvey believed that if Bryant's car was left in place it would be a traffic hazard.  Bryant waited in his car for the tow truck to arrive.  After the car was towed, Bryant was placed under arrest. His license was retained by Mulvey as evidence, and the contents of his pockets were examined.  Bryant was then placed in the back of the police car and taken to the police station.

At the station, Bryant was confined in a holding cell for approximately one hour, awaiting processing.  While he was being

_____

[2]While the affidavit as to this fact reads "12/3/2009," the court concludes that the year is a typographical error.

processed, Bryant asked Mulvey why his license had been
suspended, and Mulvey informed him that it had been suspended for
nonpayment of a fine.  Bryant informed Mulvey that he had paid
the fine and had a receipt at home.  Mulvey did not take Bryant
to his home to retrieve the receipt.  Bryant was charged with
operating his vehicle under suspension in violation of Conn. Gen.
Stat. § 14-215, failure to return a suspended license in
violation of Conn. Gen. Stat. § 14-112(f), and failure to signal
a turn in violation of Conn. Gen. Stat. § 14-242.  He was then
released.

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such issue
warrant judgment for the moving party as a matter of law.  Fed.
R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d

Bryant ultimately determined that a failure by the
Department of Motor Vehicles ("DMV") to process the payment he
had made for reinstatement of his license is what caused the DMV
to erroneously report his license as suspended.  Shortly after
being released, Bryant alerted the DMV of its error, and it
issued a notice rescinding the suspension.  Bryant was never
prosecuted for the crimes charged.

## II.  <u>LEGAL STANDARD</u>

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such issue
warrant judgment for the moving party as a matter of law.  Fed.
R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d

1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine

-4-

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion.

-5-

Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment."  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]."  Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp., 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted).  Furthermore, "unsupported allegations do not create a

-6-

material issue of fact." Weinstock, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

### A.   Section 1983 Claims

The plaintiff brings § 1983 claims for false imprisonment, malicious prosecution, false arrest, illegal search and seizure, excessive force, deprivation of property without due process of law, violation of his rights by the City of Bristol pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), conspiracy, and the violation of his Sixth Amendment rights.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  The defendants contend that the plaintiff has failed to produce evidence that could establish a violation of any federally protected rights.  The court agrees.

### 1.   False Arrest, False Imprisonment, and Malicious Prosecution

The defendants argue that they are entitled to summary judgment on these claims because the arresting officer had probable cause.  "A Section 1983 claim for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause."

Sulkowska v. City of New York, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "To establish a claim of false arrest, false imprisonment, malicious prosecution, or a violation of civil rights arising therefrom, a plaintiff must prove that the underlying arrest lacked probable cause." Brown v. Ontario County, No. 09-cv-6228L, ---F. Supp. 2d---, 2011 WL 2084214 at *2 (W.D.N.Y. May 27, 2011); see also Bernard v. U.S., 25 F.3d 98, 103-104 (2d Cir. 1994) (finding that the presence of probable cause defeats both a claim for false arrest and a claim for malicious prosecution); Weyant, 101 F.3d at 852 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (internal quotation marks omitted).

   "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." Bontatibus v. Ayr, 386 F. Supp. 2d 28, 32 (D. Conn. 2005) (internal quotation marks and brackets omitted).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."  Weyant, 101 F.3d at 852.

   The plaintiff claims a genuine issue of material fact exists

as to whether the arresting officer had probable cause because
(1) the plaintiff does not remember whether or not he signaled
before turning out of the parking lot, and (2) he did not see
signs posted that indicated that the street was a one-way street,
and moreover, if signs were posted, they were not posted
"pursuant to the State Traffic Commission" and are therefore
unenforceable.  (Pl.s' 56(a)(2) Stmt., ¶ 2.)

       That Bryant does not recall whether he signaled before
turning does not create a genuine issue of material fact.  "[A]
witness's non-denial does not create a genuine issue of material
fact when the witness has testified to a lack of memory and no
affirmative evidence has been introduced."  Craig v. Colonial
Penn Ins. Co., 335 F. Supp. 2d 296, 305 (D. Conn. 2004); see also
F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 205 F.3d
66, 75 (2d Cir. 2000) (noting that the defendant's citations to
"vague denials and memory lapses . . . do not create genuine
issues of material fact."); Newby v. Town of Cromwell, 25 F.
Supp. 2d 56, 58 (D. Conn. 1998) (holding that plaintiff's
inability to recall whether he successfully completed certain
items of a field sobriety test does not create a genuine issue of
material fact).  Thus, because Bryant does not dispute Mulvey's
assertion that he failed to signal, there is no genuine issue as
to whether Mulvey had probable cause to initiate the traffic
stop.

Because Mulvey had probable cause to stop Bryant for failing to signal, the court need not determine whether there is a genuine issue as to whether Mulvey also had probable cause to stop Bryant for turning the wrong way onto a one-way street.

In addition to having probable cause to initiate a traffic stop, Mulvey had probable cause to subsequently arrest Bryant. After pulling Bryant over, Mulvey discovered that Bryant's driver's license was reported as suspended, and he relied on that information to arrest Bryant for driving with a suspended license.  Bryant does not claim that the database Mulvey consulted in obtaining this information was unreliable, and there is no evidence that Mulvey had reason to believe that the information was inaccurate.  Mulvey relied on "reasonably trustworthy information" sufficient to "warrant a person of reasonable caution" to believe Bryant's license had been suspended.  Bontatibus, 386 F. Supp. 2d at 32.  Thus, he had probable cause for arresting Bryant.  See United States v. Santa, 180 F.3d 20, 27 (2d Cir. 1999) (holding officers' reliance on statewide computer database record erroneously showing existence of arrest warrant was objectively reasonable; record was incorrect due to court clerk error and officers did not have reason to know the record was incorrect); Martin v. Rodriguez, 154 F. Supp. 2d 306, 313 (D. Conn. 2001) (finding that officers relying on a criminal history database containing erroneous

information due to a clerical error nonetheless had probable cause).

Because Mulvey had probable cause for both stopping Bryant and taking him into custody, Bryant's claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law.

### 2. **Search and Seizure**

The plaintiff claims he was the victim of an unreasonable search of his car and his person, and an unreasonable seizure of his car, his driver's license and his person in violation of the Fourth Amendment.  In United States v. Robinson, the Supreme Court examined the legality of the search of an individual arrested on suspicion of, inter alia, driving with a suspended license.  414 U.S. 218 (1973).  The Court held:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.  It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

Id. at 235.  As discussed above, Bryant's arrest was supported by probable cause.  Examining the contents of Bryant's pockets incident to his arrest was therefore a reasonable search.

As to the plaintiff's claim that there was an unlawful

-11-

search of his vehicle, there is no evidence that a search of Bryant's vehicle occurred.  The defendants have all affirmed that they did not search Bryant's vehicle, and Bryant did not personally observe his vehicle being searched.

The plaintiff also claims that the seizure of his license violated his Fourth Amendment rights.  "[T]he general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and even without a warrant in various circumstances) . . . ."  Ft. Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 (1989).  Bryant was arrested and charged with operating his vehicle under suspension in violation of Conn. Gen. Stat. § 14-215 and failure to return a suspended license in violation of Conn. Gen. Stat. § 14-112(f).  The search of his person was lawful, and Mulvey had probable cause to seize his driver's license as an instrumentality or evidence of the crimes charged: driving with a suspended license and failure to return a suspended license.

Impounding the plaintiff's automobile was also lawful.  "In the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken in police custody."  South Dakota v. Opperman, 428 U.S. 364, 368 (1976) (internal citation omitted).  As a part of exercising this function, it is "beyond challenge"

-12-

that police officers may "seize and remove from the streets
vehicles impeding traffic or threatening public safety and
convenience . . . ." Id. at 369  "This rule is particularly
important where a car would be unattended, even if legally
parked, and the police have reason to believe that a suspect will
be separated from his vehicle for a long period of time." United
States v. Mundy, 806 F. Supp. 373, 376 (E.D.N.Y. 1992).

Here, Mulvey affirms that Bryant's car was parked on a
"heavily traveled roadway" and that had the car been left where
it was stopped, "it would slow, obstruct and menace traffic" in
the area.  (Defs.' Mot. Summ. J. Ex. A, ¶¶ 16-17 (Doc. No. 41).)
Moreover, the plaintiff admitted at his deposition that the
shoulder where he stopped his car was not wide enough to
accommodate even a bicycle.  Given these circumstances, it was
reasonable for Mulvey as a part of his caretaking function, to
arrange to have Bryant's car impounded prior to taking Bryant
into custody.

Finally, Bryant challenges the seizure of his person.  The
Supreme Court addressed similar circumstances in Atwater v. City
of Lago Vista, 532 U.S. 318 (2001).  There, Atwater was pulled
over, taken into custody, and processed at a police station after
a police officer observed her violating a seatbelt law, which was
a misdemeanor.  Atwater pled guilty to some of the misdemeanor
charges against her and paid a $50 fine.  She filed suit alleging

-13-

her Fourth Amendment "right to be free from unreasonable seizure" had been violated.  Id. at 325.  She petitioned the Supreme Court for a constitutional rule forbidding a custodial arrest when a conviction could not ultimately result in jail time, reasoning that courts must strike a balance between the individual and societal interests protected by the Fourth Amendment.  The Court declined to do so, noting that "we have traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review."  Id. at 347.  The Court opted instead for a bright-line rule: "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Id. at 354.

Mulvey had probable cause to believe Bryant had committed a criminal offense in his presence.  Taking Bryant into custody, then, was not a violation of his Fourth Amendment rights.

### 3.   **Excessive Force**

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham v. Connor, 490 U.S. 386,

396 (1989) (internal quotation marks omitted); see also Conn.
Gen. Stat. § 53a-22(b) ("a peace officer . . . is justified in
using physical force upon another person when and to the extent
that he or she reasonably believes such to be necessary to (1)
Effect an arrest . . . of a person whom he or she reasonably
believes to have committed an offense . . . ."). However, "[t]he
Fourth Amendment prohibits the use of unreasonable and therefore
excessive force by a police officer in the course of effecting an
arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).
To determine whether the force used was reasonable or not, the
Fourth Amendment calls for a "careful balancing of the nature and
quality of the intrusion on the individual's Fourth Amendment
interests against the countervailing government interests at
stake." Graham, 490 U.S. at 396 (internal quotation marks
omitted).

    The sole support Bryant offers for his claim of excessive
force is the following argument: "[t]he Plaintiff was arrested.
There was inherently a touching of his person . . . [and] said
physical contact was against the Plaintiff's will and unwanted by
him." (Pl.s' Obj. Defs.' Mot. Summ. J., 12 (Doc. No. 47) ("Pl's
Obj.") (ECF page numbers).)  There is no allegation that this
force was more than was necessary to take the plaintiff into
custody.  Moreover, the individual defendants have all affirmed
that they did not use profanity, raise their voices, punch, kick,

hit, strike, threaten, or physically harm Bryant, and there is no
allegation that they did so.  Thus, there is no genuine issue of
material fact as to whether the force used to place Bryant into
custody was reasonable.

### 4.  <u>Substantive Due Process</u>

The plaintiff claims that the seizure of his car and his
driver's license was arbitrary and in violation of his Fourteenth
Amendment right to substantive due process.  The Supreme Court
has recognized that, "[a]s a general matter, the Court has always
been reluctant to expand the concept of substantive due process
because the guideposts for responsible decisionmaking in this
unchartered area are scarce and open-ended."  <u>Albright v. Oliver</u>,
510 U.S. 266, 271-72 (1994) (quoting <u>Collins v. Harker Heights</u>,
503 U.S. 115, 125 (1992) (internal quotation marks omitted).  In
<u>Albright</u>, the petitioner contended that his alleged unlawful
detention was in violation of his right to substantive due
process.  The Court, however, held that "[w]here a particular
Amendment provides an explicit textual source of constitutional
protection against a particular sort of government behavior, that
Amendment, not the more generalized notion of substantive due
process, must be the guide for analyzing these claims."  <u>Id.</u> at
273 (internal quotation marks omitted).  In holding that analysis
under the Fourth Amendment was proper under the circumstances,
the Court noted, "[t]he framers considered the matter of pretrial

-16-

deprivations of liberty and drafted the Fourth Amendment to address it. . . . We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." Id. at 274; see also Russo v. Bridgeport, 479 F.3d 196, 208 (2d Cir. 2007) (holding that a claim of sustained detention stemming from law enforcement officials' failure to investigate was rightly analyzed under the Fourth Amendment and not substantive due process, observing, "when the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment" (quoting Murphy v Lynn, 118 F.3d 938, 944 (2d Cir. 1997))).

Accordingly, the seizure of the plaintiff's license and automobile cannot form the basis for a substantive due process claim.

### 5.   **Procedural Due Process**

The plaintiff claims that the seizure of the license and automobile were also in violation of his Fourteenth Amendment right to procedural due process as they occurred without notice and an opportunity for a pre-deprivation hearing.  "Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual." Gordon v. Nicoletti, 84 F. Supp. 2d 304, 308 (D. Conn. 2000).  For the plaintiff "to

-17-

establish a procedural due process violation, [he] must: (1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." Rosa R. v. Connelly, 889 F. 2d 435, 438 (2d Cir. 1989). "In this context, it is well-settled that the court should examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon the deprivation were constitutionally sufficient." Parsons v. Pond, 126 F. Supp. 2d 205, 214-15 (D. Conn. 2000) (quoting Vlamonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994)) (internal quotation marks omitted).

With respect to the plaintiff's driver's license, the Supreme Court has recognized that "[o]nce licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood." Bell v. Burson, 402 U.S. 535, 539 (1971). "It is well established that many state-created privileges, such as a license to drive, 'are not to be taken away without that procedural due process required by the Fourteenth Amendment,'" Gudema v. Nassau Cnty., 163 F.3d 717, 724 (2d Cir. 1998) (quoting Bell, 402 U.S. at 539). There is no dispute that Bryant holds a property interest in his driving privilege.

The defendants distinguish between Bryant's driving

privilege and the physical item, i.e., the driver's license, he carries with him to reflect the fact that the state has granted him the driving privilege.  They argue that taking Bryant's driver's license did not implicate his property interest. However, under Connecticut law, "[e]ach operator of a motor vehicle shall carry his operator's license while operating such vehicle.  Failure to carry such operator's license as required by the provisions of this section shall be an infraction."  Conn. Gen. Stat. § 14-213.  Because the failure to carry a driver's license is punishable as an infraction, Bryant cannot freely exercise his driving privilege unless he physically possesses the driver's license.  Therefore, the court concludes that taking Bryant's driver's license implicated his property interest in his driving privilege.

Even though Bryant was deprived of his driving privilege by the defendants, there was no violation of his right to procedural due process.  As the Supreme Court noted in <u>Parratt v. Taylor</u>:

> Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests.  The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'  However, . . . we have rejected the proposition that 'at a meaningful time and in a meaningful manner' <u>always</u> requires the state to provide a hearing prior to the initial deprivation of property.  This rejection is based in part on the impracticability in some cases of providing

-19-

> any preseizure hearing under a state-
> authorized procedure, and the assumption that
> at some time a meaningful hearing will be
> available.

451 U.S. 527, 540-41 (1981) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  The Court went on to clarify that such a situation arises when a plaintiff is subjected to a deprivation of property "as a result of a random and unauthorized act by a state employee."  Id. at 541.  "In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur," thus rendering it "not only impracticable, but impossible, to provide a meaningful hearing before the deprivation."  Id.; see also Gudema, 163 F.3d at 724 ("A deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized, however, does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter.").

Viewing the evidence in the light most favorable to the plaintiff, Bryant took affirmative steps to prevent his license from being suspended, i.e., paying his court fines and mailing his receipt to the DMV.  Although he was in compliance with the requirements for maintaining his license to drive, it was suspended because an unidentified clerk at the DMV failed to process his proof of payment and wrongfully suspended his license, not as the result of DMV employees properly following established DMV procedures.  This behavior amounts to a random

and unauthorized act, so the pertinent question is whether Bryant had a meaningful postdeprivation remedy.

The applicable statute provides that the commissioner of motor vehicles may suspend or revoke "the right of any person to operate a motor vehicle in this state . . . with or without a hearing."  Conn. Gen. Stat. § 14-110(a); see also id. § 14-111(d) (notice may be sent after suspension of license).  A person whose license has been suspended "may make application to the commissioner for the reversal or reduction of the term of such suspension," id. § 14-111(k), and "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court."  Id. § 4-183 (applicable to Title 14 through the operation of § 14-134).  These statutory provisions affording the right to both administrative review and appeal to the superior court amount to meaningful postdeprivation remedies.  See State v. Baltromitis, 242 A.2d 99, 101 (Conn. Cir. Ct. 1967) (holding that § 14-111, coupled with § 14-134, provides "ample protection against arbitrary or uninformed action of the commissioner").  Thus, under the circumstances, taking Bryant's driver's license and depriving him of his privilege to drive was not a violation of his right to procedural due process.

As to his car, it is undisputed that Bryant has a property interest in his car.  However, Bryant claims that his car was

taken "by a member of the Bristol Police Department in an
arbitrary and random fashion." (Pl.'s Obj., 22.)   Thus, the
plaintiff contends that Mulvey's decision to tow the vehicle was
random and unauthorized rather than one taken pursuant to an
established procedure.   As with Bryant's driver's license, the
pertinent question is whether Bryant had a meaningful
postdeprivation remedy.

     "[A]ny officer attached to an organized police department .
. . upon the discovery of any motor vehicle, . . . which is a
menace to traffic or public health or safety, shall take such
motor vehicle into such . . . officer's custody and cause the
same to be taken to and stored in a suitable place."   Conn. Gen.
Stat. § 14-150(b).   Section 14-150(b) further provides that after
the vehicle is towed, its owner is to receive notice by certified
mail that, inter alia, "the owner has a right to contest the
validity of such taking by application . . . ."   Id. § 14-150(e).
"The chief executive officer of each town shall appoint a
suitable person, . . . to be a hearing officer to hear
applications to determine whether or not the towing within such
municipality of such motor vehicle was authorized under the
provisions of this section."   Id. § 14-150(f)(1).   Finally,
"[a]ny person aggrieved by the decision of such hearing officer
may . . . appeal to the superior court for the judicial district
wherein such hearing was held."   Id.

Thus, Bryant had a meaningful postdeprivation remedy for the allegedly "arbitrary and random" action by Mulvey: both administrative review by an independent body and appeal to the superior court. Therefore, the towing and impounding of Bryant's car without a prior hearing was not a violation of his right to procedural due process.

### 6.  Monell Claim

The plaintiff alleges that the City of Bristol is liable in accordance with Monell v. Department of Social Services, 436 U.S. 658 (1978), for the constitutional violations of its employees caused by its unconstitutional customs, policies, and practices as well as its failure to adequately train its employees.

In order to hold a municipality liable in an action under 42 U.S.C. § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).  A municipality may also be held liable "where the city is aware that its [constitutional] policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them."  Amnesty America v. Town of West Hartford, 361 F.3d 113, 125 (2d Cir. 2004) (citing City

-23-

of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989)).  However,
"Monell does not provide a separate cause of action for the
failure by the government to train its employees; it extends
liability to a municipal organization where that organization's
failure to train, or the policies or customs that it has
sanctioned, led to an independent constitutional violation."
Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  Put
another way, in order for a municipality to be held liable under
Monell, there must first be an underlying constitutional
violation.

The plaintiff's only argument in support of this claim is
that Mulvey failed to handcuff Bryant, and the failure to do so
was a violation of departmental policy.  A failure to handcuff
Bryant cannot serve as the underlying constitutional violation,
so there is no basis for a Monell claim against the City of
Bristol.

### 7.   **Conspiracy**

The defendants argue, correctly, that the plaintiff has
failed to allege any of the underlying elements required to prove
conspiracy.  "To prove a § 1983 conspiracy, a plaintiff must
show: (1) an agreement between two or more state actors or
between a state actor and a private entity; (2) to act in concert
to inflict an unconstitutional injury; and (3) an overt act done
in furtherance of that goal causing damages."  Pangburn v.

-24-

Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  It his opposition,
Bryant dedicates only a half sentence to his claim of conspiracy,
asserting that the defendants "conspired with one another to
violate his constitutional rights." (Pl.'s Obj., 25.)  Such a
conclusory statement does not create a genuine issue of material
fact.

    Moreover, even if the plaintiff were to allege the elements
of conspiracy, his claim would be barred by the intracorporate
conspiracy doctrine.  A civil rights conspiracy requires an
agreement between two or more actors to inflict an
unconstitutional injury.  "This 'two or more actors' requirement
cannot be satisfied where all of the alleged conspirators are
employees of a single entity and acting within the scope of their
employment as agents of that entity."  Anemone v. Metro. Transp.
Auth., 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006).  The plaintiff
alleges a conspiracy among defendants Mulvey, Healy, Brown, and
Divenere, all of whom are police officers with the Bristol Police
Department.  Thus summary judgment is being granted as to this
claim.

### 8.   Sixth Amendment Violation

    The plaintiff claims that his rights were violated because
he was not afforded the opportunity to present a defense to the
charges on which he was arrested by the Bristol Police
Department. While "the right of an accused to confront the

witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment," <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965), "Sixth Amendment rights do not attach until the time that adversary judicial proceedings have been initiated." <u>In re Grand Jury Subpoena Served Upon Doe</u>, 781 F.2d 238, 244 (2d Cir. 1985) (internal quotation marks omitted). No criminal prosecution was initiated against the plaintiff, and therefore his Sixth Amendment rights never attached.

**B.**    **State Law Claims**

Having granted summary judgment on the plaintiff's federal claims, the court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the plaintiff's remaining state law claims of assault and battery, invasion of privacy, violation of the Connecticut Constitution art. I, §§ 7 and 9, and deprivation or property, false imprisonment, illegal search and seizure, malicious prosecution, and false arrest. <u>See Valencia ex rel. Franco v. Lee</u>, 316 F. 3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).

**IV.   <u>CONCLUSION</u>**

Based upon the foregoing, the Defendant's Motion for Summary Judgment (Doc. No. 41) is hereby GRANTED as to the remaining federal claims, and the remaining state law claims are hereby DISMISSED as the court declines to exercise jurisdiction over them.

The Clerk shall close this case.

It is so ordered.

Dated this 18th day of July, 2011, at Hartford, Connecticut.


_____
          /s/ AWT
        Alvin W. Thompson
   United States District Judge